**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WESLEY NEAL, JR.,

                 Petitioner,                   Case Number: 2:08-CV-14123
                                              HON. ARTHUR J. TARNOW

v.

HUGH WOLFENBARGER,

                 Respondent.

_____/

**<u>OPINION AND ORDER CONDITIONALLY GRANTING</u>**
**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

      This matter is before the Court on Petitioner Wesley Neal Jr.'s petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  Neal challenges his convictions for

carjacking, assault with intent to commit murder, armed robbery, possession of a firearm

during the commission of a felony, and felon in possession of a firearm.

      Neal waived his right to a jury trial.  The trial judge, acting as the fact-finder,

chose to exit the courtroom during closing arguments for the sole purpose of looking at an

individual who was in the lock-up and who Neal identified as the actual perpetrator.  The

trial judge viewed this individual outside the presence of counsel and Neal.  The state

court's finding that the deprivation of counsel during this critical stage of the proceeding

was harmless error is contrary to *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984).

Alternatively, the Michigan Court of Appeals' decision that the trial court judge did not

look at the individual in lock-up for evidentiary purposes is an erroneous factual finding,

and the Court reviews the related claims "'unencumbered by the deference the AEDPA normally requires.'"  *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012), *quoting Panetti v. Quarterman*, 551 U.S. 930, 948 (2007).  The Court finds that Neal was denied his right to counsel and right to be present at a critical stage of the proceeding, and that the denial of Neal's right to be present was not harmless error.  The Court grants a conditional writ of habeas corpus.

## I.      Facts and Procedural History

Neal's convictions arise from the shooting of Bruce Clark in the City of Detroit on November 7, 2005.  Bruce Clark testified that, during the early morning hours on that date he picked up a woman who was standing at the corner of Joy Road and Petoskey Avenue, believing she was a prostitute.  He later identified her as Shanna McElroy.  He and McElroy agreed that he would pay $20 for her services.  As he was driving on Joy Road, police pulled up behind his vehicle.  McElroy exited the vehicle and went to a nearby porch.  The police looked in Clark's vehicle and told him that he had been driving too fast.  Police warned Clark that he should be more cautious, but did not issue a speeding ticket.  McElroy returned to Clark's car.  She directed him to a darker part of Joy Road.  When Clark parked his car, another car stopped directly in front of his car. The driver of that vehicle, a man, approached the passenger side of Clark's car.  Clark grew suspicious and shifted his vehicle into drive, but McElroy shifted it back to park. McElroy opened her window and the man pointed a gun at Clark and demanded his money.  Clark gave the man some cash.  The man then shot Clark.  In an attempt to

defend himself, Clark grabbed the barrel of the gun, reaching over McElroy. McElroy bit and hit him. The man continued shooting and Clark testified he was shot between six and nine times. The man then pulled Clark from the vehicle and the woman drove off in Clark's car.

At a live lineup on January 28, 2006, Clark identified Neal as "looking like" the man who shot him, stating: "The third one looks like the one that shot me but he had a little more beard." Tr., 6/13/06 at 42. At trial, Clark testified that he had no doubt about Neal's identity as the shooter.

The gun used to shoot Clark was recovered on November 11, 2005, from a home at 9292 North Martindale, approximately two blocks from the shooting site. City of Detroit police officer Anthony O'Rourke testified that he observed Aaron Miles on the front porch of the home with Neal and McElroy. He observed Miles throw a gun into the front room of the house when Miles saw Officer O'Rourke. Officer O'Rourke arrested Miles and retrieved the gun. His partner informed him the gun appeared to be the same caliber as that used in the Clark shooting. The gun was later found to be the same gun used to shoot Clark. Neal and McElroy were questioned but not arrested at the time. Officer O'Rourke described Miles as much larger, heavier, and lighter-skinned than Neal. He estimated Miles to be in his twenties and Neal in his late thirties or early forties.

Shanna McElroy testified pursuant to a plea agreement. She testified that, on November 7, 2005, she and Neal devised a plan to rob someone because the two, who had been smoking crack cocaine, needed money to purchase additional drugs. She planned to

3

solicit a man seeking sex and Neal, who had a gun, would rob the man.  She walked to

Joy Road, where Clark picked her up.  He agreed to drive her to a friend's house.  On the

way there, she negotiated with him to perform a sexual act for $20.  After they agreed on

a price, Clark was pulled over by police.  McElroy exited the vehicle and observed

Clark's interaction with police from a nearby porch.  After police left, she reentered the

vehicle and directed Clark to a darkened street.  When she saw Neal's car approach, she

told Clark he was her cousin.  Neal approached the vehicle and she unlocked her door.

Neal opened the door, pointed a gun at Clark and demanded his money.  Clark attempted

to start his car, so she took the keys from the ignition and threw them on the floor.

McElroy then heard a gunshot.  At some point, Clark ended up outside the car wrestling

with Neal.  McElroy stayed in the car, searching for money.  She then heard Neal yell for

help.  She exited the car and saw that Clark had grabbed the barrel of the gun.  McElroy

testified that she kicked Clark and bit him, causing Clark to lose his hold on the gun. She

hollered at Neal to kill Clark.  Neal told her to get in the car.  She got in Neal's vehicle,

and Neal entered Clark's vehicle.  They both drove away.

   McElroy further testified that she was present when Miles was arrested.  She

testified that she, Miles, and Neal were on the front porch of a drug house.  Neal was

holding the gun when police approached and he threw it into the house.  She testified that

Miles was never holding the gun.  While incarcerated as a suspect in Clark's shooting,

McElroy received a letter from Petitioner stating, "Shanna, stay strong and quiet so that

we can get through this shit and make home to start over fresh."  6/15/06 at 88.  On the

4

morning of her trial testimony, a trustee at the Wayne County Jail approached her and said, "Your husband said keep your mouth shut and don't say nothing because he's going to win the case."[1]  6/15/06 at 90.

During closing argument, defense counsel argued that Miles, not Neal, was the shooter.  Defense counsel asked the judge to bring Miles into the courtroom to stand next to Neal so that the judge could ascertain whether Clark could have mistaken Neal for Miles.[2]  The trial judge did not respond to defense counsel's request.  Defense counsel completed his closing argument.  A moment or two into the prosecutor's rebuttal argument, the judge interrupted the prosecutor and the following occurred:

> The Court:   Hold on right there.  Is Mr. Miles in the lock up?
>
> Deputy:   Yes, he is.
>
> The Court:   Don't anybody go anywhere.
>
> (Judge leaves bench to go to lock up area)
>
> Judge:   All right.  Back on the record.  Let the record reflect the Court did have an opportunity to go back and take a peek at Mr. Miles.  Curiosity got the better of me.  But let the record reflect that there certainly is [sic] striking dissimilarities between Mr. Neal and Mr. Miles, and that certainly the description of Mr. Miles as by the police officers, as well as by the other witnesses in this case is consistent.  He's younger, taller, bigger, and somewhat lighter.

---

[1]  There was some testimony at trial that McElroy occasionally referred to Neal as her "husband," though they were not married.

[2]  Miles was present in the courthouse because the prosecution believed the defense intended to call him as a witness.  The defense, however, waived Miles' appearance.

5

Tr., 6/16/06 at 25-26.  The prosecutor then completed her rebuttal argument.

The trial court judge immediately rendered his verdict, finding Neal guilty of carjacking, assault with intent to commit murder, armed robbery, felony firearm, and felon in possession.  After detailing the elements of the charged offenses, the judge summarized the trial testimony.  He noted that the case "boils down to [the question] is it Mr. Neal, Mr. Miles or some other unknown third person."  *Id.* at 36.  The judge relied on his own view of Miles in lockup to corroborate Officer O'Rourke's testimony:

> Then we've got Officer O'Rourke, who testifies that less than two blocks
> from the scene a few days after the incident he places Mr. Miles, Mr. Neal
> and someone he later identifies as Ms. McElroy on a porch.  There is the
> weapon and, of course, the weapon is later through ballistic reports which I
> believe have been stipulated to being positively tied to this matter.  Then
> there's mister or O'Rourke's testimony that Miles is larger and taller and
> younger and lighter than the defendant, and as the Court previously state on
> the record took judicial notice of Mr. Miles, went back to the lock up.  Did
> observe him, and that observation is consistent.

Tr., 6/16/06 at 33.

Neal was sentenced as a fourth habitual offender on July 12, 2006, to concurrent terms of 35 to 50 years in prison for the carjacking, assault with intent to commit murder, and armed robbery convictions, and to three to five years in prison for the felon-in-possession conviction, to be served consecutively to two years in prison for the felony-firearm conviction.

Neal filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

6

I.      The trial court violated Mr. Neal's Sixth Amendment right to the presence of counsel at a critical stage by conducting a "judge view/lineup" of a person in lockup without counsel and without Mr. Neal having personally or affirmatively waived counsel's presence.

II.     The trial court violated *Mallory* and Mr. Neal's constitutional right to be present during his trial by conducting a "judge view" in the absence of Mr. Neal where Mr. Neal never personally or affirmatively waived his right to attend.

III.    Due process requires resentencing where there was insufficient evidence that appellant was a leader in a multiple offender situation to justify scoring points for OV 14.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Neal, Jr.*, No. 272244 (Mich. Ct. App. Oct. 23, 2007).

Neal filed an application for leave to appeal in the Michigan Supreme Court.  He raised the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Neal, Jr.,* 480 Mich. 1076 (Mich. Feb. 19, 2008).

Neal filed a habeas corpus petition, raising the same claims raised on direct review.  Neal then sought, and the Court granted, a stay to allow Neal to return to state court to exhaust additional, unexhausted claims.  The Court lifted the stay on February 15, 2013, and Neal supplemented his petition to raise these additional claims:

IV.    Due Process Clause requires a new trial based on affirmation of two exculpatory witnesses who confirm that the defendant was with them at the time the crimes in question transpired.

V.     Neal was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to present a defense by investigating and locating exculpatory witnesses who would corroborate his whereabouts at the time the shooting occurred.

7

VI.    Appellate counsel was ineffective in failing to investigate the existence of
       exculpatory witnesses or raise constitutional claims related to same.

VII.   Neal was denied his Fourteenth Amendment due process right to a full and
       fair hearing where the trial court refused to hold an evidentiary hearing on
       his non-record claim of newly-discovered evidence, and where the court
       failed to apply the appropriate test on review of his newly discovered
       evidence of innocence.

Respondent has filed an answer to the petition arguing that the claims are

meritless, procedurally defaulted and/or non-cognizable.

## II.    Discussion

### A.    Standard of Review

This habeas petition is reviewed under the exacting standards set forth in the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132,

110 Stat. 1214 (Apr. 24, 1996).  Under AEDPA, a federal court cannot grant habeas relief

with respect to any claim adjudicated on the merits in a state-court proceeding unless the

state adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.
> 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"
*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,
529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute
permits a federal habeas court to 'grant the writ if the state court identifies the correct
governing legal principle from [the Supreme] Court but unreasonably applies that
principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)
(quoting *Williams*, 529 U.S. at 413).  "A state court's determination that a claim lacks
merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct.
770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section
2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in
the state criminal justice systems, not a substitute for ordinary error correction through
appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state
prisoner must show that the state court's ruling on the claim being presented in federal
court was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*
at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable
determination of fact *and* that the resulting state court decision was "based on" that
unreasonable determination.  *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### B.    Right to Counsel

#### 1.    Procedural Default

Neal argues that the trial judge's viewing of a person the judge believed to be Miles outside the presence of defense counsel violated Neal's Sixth Amendment right to counsel during a critical stage of the proceedings. Before addressing the merits of Neal's denial of counsel claim, the Court must address Respondent's argument that this claim is procedurally defaulted. Federal habeas relief is precluded on claims that were not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "independent of the federal question and adequate to support the judgment." *Walker v. Martin*, — U.S. —, —, 131 S. Ct. 1120, 1127 (2011) (internal quotations omitted). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Id.* at —, 131 S. Ct. at 1127-28, *quoting Beard v. Kindler*, 558 U.S. —, 130 S. Ct. 612, 618 (2009). Federal courts on habeas review must decide whether a state procedural bar is adequate. That is, the "adequacy of state procedural bars . . . is not

10

within the State's prerogative finally to decide; rather, adequacy "is itself a federal question." *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

The Michigan Court of Appeals reviewed Neal's denial of counsel claim for "plain error" because "defendant did not raise an appropriate objection below." *Neal*, 2007 WL 3085611 at *1.[3]  The procedural rule in question in this case, then, is the requirement that a defendant object to the denial of counsel in order to preserve the claim for appellate review.  The Court finds that the contemporaneous-objection rule, while firmly established and regularly followed in the Michigan courts as to certain claims (*e.g.* prosecutorial misconduct and the admission of evidence), was not firmly established or regularly followed with respect to limited non-preserved structural errors such as the denial of counsel at the time of Neal's trial.

The Michigan Court of Appeals cited *People v. Carines,* 460 Mich. 750 (1999), in deciding to review Neal's claim only for plain error because there was no objection in the trial court.  Thus, the Court begins with the *Carines* decision.  In *Carines,* the Michigan Supreme Court extended the plain error rule (previously applied only to unpreserved claims of nonconstitutional error) to unpreserved claims of constitutional error.  *Carines*, 460 Mich. at 764-765.  The defendant in *Carines* challenged the trial court's instruction

---

[3]  Under Michigan law, "[t]o avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, *i.e.,* clear or obvious, 3) and the plain error affected substantial rights." *People v. Carines*, 460 Mich. 750, 763 (Mich. 1999).  The third prong generally requires a showing of prejudice, "that the error affected the outcome of the lower court proceedings." *Id.*

11

on the elements of aiding and abetting felony murder.  The defendant argued that the trial court omitted an element of aiding and abetting: that defendant must have performed acts or given encouragement that assisted the commission of the crime.  Defense counsel failed to object to the instructions.  The Michigan Supreme Court found that an error occurred and the error was plain, but the defendant failed to show he was prejudiced by the error because the instructions, viewed as a whole, adequately protected his rights.  *Id.* at 770-71.  The case specifically did not involve a structural error.

The following year, the Michigan Supreme Court issued a "bright line rule" requiring automatic reversal for a structural error.  *People v. Duncan*, 462 Mich. 47, 48 (2000).  *Duncan,* which had been held in abeyance pending a decision in *Carines,* involved an unpreserved constitutional error.  *Id.* at 50.  The defendant in *Duncan* was convicted of first-degree murder and two counts of felony firearm.  The trial court completely failed to instruct the jury regarding *any* of the elements of felony-firearm. The error was not preserved by a trial court objection, but the Michigan Supreme Court specifically declined to apply the *Carines* plain error analysis because the error was a structural defect "affecting the very nature of the trial process."  *Id.* at 57.

*Duncan* was decided six years before Neal's trial and has not been overruled, abrogated, or otherwise invalidated.  Rather, Michigan courts continue to endorse the view that automatic reversal results from a structural error.  For example, in *People v. Solivan*, 2008 WL 4330178, *3 (Mich. Ct. App. Sept. 23, 2008), the Michigan Court of Appeals held that if a faulty jury instruction were determined to be structural error

automatic reversal would be required despite the claim being unpreserved.  Similarly, in *People v. Copeland*, the Michigan Court of Appeals held, "[b]ecause defendant did not present this claim to the trial court, he must show a plain error affecting his substantial rights, *unless the error was structural in nature.*"  *People v. Copeland*, No. 228565, 2002 WL 1575241, *2 (Mich. Ct. App. July 16, 2002) (emphasis supplied).  *Cf. People v. Thomson*, 2009 WL 2605417, *4 (Mich. Ct. App. Aug. 25, 2009) (requiring a defendant to demonstrate plain error affecting his substantial rights to avoid forfeiture of an unpreserved issue *because* the error was not structural); *Savoy v. Maryland*, 420 Md. 232, 243 n.4 (Md. 2011) (noting that "the Michigan Supreme Court held in *Duncan* that structural errors are automatically reversible, regardless of the failure to make a contemporaneous objection").

In sum, at the time of Neal's trial, Michigan courts did not have a firmly established rule preventing appellate review of a non-preserved structural error.  Indeed, the "bright-line rule" established in *Duncan* required automatic reversal in the case of a structural error.  The Court, thus, must then determine whether, at the time of Neal's trial, Michigan courts treated the denial of counsel at a critical stage in a proceeding as a structural error.  Michigan courts have clearly and repeatedly answered that question in the affirmative:  "It is well established that a total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal."  *People v. Willing*, 267 Mich. App. 208, 224 (Mich. Ct. App. 2005).  In *People v. Vaughn*, the Michigan Supreme Court noted that "[b]ecause the right to counsel

13

'invokes, of itself, the protection of a trial court,' preservation of the right does not require an affirmative invocation." 491 Mich. 642, 657 (2012), *quoting Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). *See also People v. Russell*, 471 Mich. 182, 194 n.29 (Mich. 2004) ("The complete denial of counsel at a critical stage of a criminal proceeding is a structural error that renders the result unreliable, thus requiring automatic reversal."); *People v. Gietek*, No. 306087, 2012 WL 276039, *4 (Mich. Ct. App. Jan. 24, 2013) (same); *People v. McLean*, No. 294358, 2011 WL 4056389, *9 (Mich. Ct. App. Sept. 13, 2011) (same); *People v. Tuscano*, No. 253609, 2006 WL 233392, *4 (Mich. Ct. App. Jan. 31, 2006) (same); *People v. Willing*, 267 Mich. App. 208, 224-25 (Mich. Ct. App. 2005) (same).

The Court therefore finds that, at the time of Petitioner's trial, Michigan courts viewed the denial of counsel as a structural error and there was no clearly established and regularly followed rule requiring a contemporaneous objection to a structural error. Therefore, the contemporaneous objection rule in the context of an unpreserved structural error cannot be considered "adequate and independent" of federal law so as to preclude federal habeas review. The Court will examine the merits of Neal's claim.

### 2.    Review of the merits

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The "plain wording of [that] guarantee . . . encompasses counsel's assistance whenever necessary to assure meaningful

14

'defence'." *United States v. Wade*, 388 U.S. 218, 225 (1967). This right to counsel extends to all critical stages of a judicial proceeding. *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). Where a petitioner claims that he was denied the effective assistance of counsel, courts utilize the two-part inquiry established in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring a petitioner to show both ineffectiveness and prejudice. Under certain circumstances, prejudice is presumed. *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting Cronic, 466 U.S. at 658–59, 104 S.Ct. 2039). These circumstances are: (1) when the accused is denied the presence of counsel at a critical stage in the proceeding; (2) when counsel fails to subject the case to meaningful adversarial testing; and (3) when the circumstances are such that competent counsel would very likely be unable to render effective assistance. *Henness v. Bagley*, 644 F.3d 308, 323 (6th Cir. 2011), *citing Bell v. Cone*, 535 U.S. at 695-96; *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007); *Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir. 2003). The first of these, absence of counsel at a critical stage in the proceeding is relevant to the present case.

**a.**

The last reasoned state court decision addressing Neal's denial of counsel claim is that of the Michigan Court of Appeals. The Michigan Court of Appeals denied this claim as follows:

> [A criminal defendant] is entitled to attend, and have the assistance of counsel during, all critical stages of the criminal proceedings. *People v.. Kurylczyk*, 443 Mich. 289, 296; 505 NW2d 528 (1993); *People v. Mallory*,

421 Mich. 229, 247; 365 NW2d 673 (1984), reh. den. 422 Mich. 1201 (1986). Critical stages of the proceedings are stages where counsel's absence may harm the defendant's right to a fair trial, *People v. Burhans*, 166 Mich. App. 758, 764; 421 N.W.2d 285 (1988), and include the trial stage. *People v. Russell*, 471 Mich. 182, 187-188; 684 NW2d 745 (2004).

There can be no doubt that a jury view of a crime scene is a critical part of the trial which a defendant is entitled to attend. *Mallory, supra* at 247-248; *People v. Kent*, 157 Mich. App. 780, 793; 404 NW2d 668 (1987). Likewise, in the case of a bench trial, the defendant and his attorney are entitled to an opportunity to attend the judge's view of a crime scene. *United States v. Walls*, 443 F.2d 1220, 1222-1223 (6th Cir. 1971). That is because the view of the scene is or has the effect of evidence. *Id.* at 1223; *Mallory, supra* at 248 n.13. Further, the defendant's presence affords him the opportunity to make observations of the area and any possible changes that may aid in his defense and to guard against misconduct by the jurors. *Mallory, supra* at 247-248. While it is not clear that the viewing of a person is the equivalent of the viewing of a scene, it is clear that a court cannot, without the parties' consent, seek out extrinsic evidence and use the information thus obtained to determine a fact in issue. *Valentine v. Malone*, 269 Mich. 619, 630; 257 N.W. 900 (1934). Although the viewing here took place during the trial, it does not appear to have been done for evidentiary purposes. Indeed, the presentation of proofs had already closed and the judge stated that he acted only out of curiosity. Further, there is nothing to suggest that the trial court relied on the view of Miles to determine a fact in issue. Accordingly, we conclude that defendant has failed to establish a plain error.

*Neal*, 2007 WL 3085611 at *2.

The Michigan Court of Appeals' denial of the absence of counsel claim was based upon a finding that, though the trial court's view of the person in lock-up was a critical stage of the criminal proceeding, the error was harmless. At the time of the Michigan Court of Appeals' decision, the holdings of the Supreme Court clearly established that the denial of counsel during a critical stage of trial may not be treated as harmless error.

16

In *Penson v. Ohio*, 488 U.S. 75 (1988), the Supreme Court held that the right to counsel is "'so basic to a fair trial that [its] infraction can never be treated as harmless error.'" *Id.* at 88, *quoting Chapman v. California*, 386 U.S. 18, 23 n.8 (1967). Similarly, the Sixth Circuit, *citing Cronic*, has held that "[h]armless error analysis is never appropriate when a criminal defendant is denied counsel during a critical stage of his trial, because prejudice is always presumed in such circumstances." *Hereford v. Warren*, 536 F.3d 523, 541 (6th Cir. 2008), *citing Cronic*, 466 U.S. at 658. *See also Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007) ("It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error."). Accordingly, by applying a harmless error analysis, the Michigan Court of Appeals, which failed even to cite *Cronic*, "applie[d] a rule that contradicts governing law set forth in [Supreme Court] cases." *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Habeas relief is granted.

**b.**

An alternative reading of the Michigan Court of Appeals' opinion also warrants habeas relief. While the Court finds that the state court incorrectly applied a harmless error analysis to its finding that counsel was denied at a critical stage of the pleading, an alternative reading of the Michigan Court of Appeals' opinion is that the state court found no plain error based upon the following factual finding: "Although the viewing here took place during the trial, it does not appear to have been done for evidentiary purposes." *Id.*

17

That is, the Michigan Court of Appeals held that *because* the viewing was not done for evidentiary purposes, it was not a critical stage of the proceeding. The Court holds that this finding was an unreasonable factual determination under § 2254(d)(2), and that the state court relied on this factual determination in reaching its decision.[4]

To reach this factual determination, the state court relied on three rationales. First, the Michigan Court of Appeals observed that the presentation of proofs had already closed at the time the judge viewed Miles. While the parties may have rested their cases, a verdict had not yet been rendered. A juror's obligation not to investigate the case, conduct any experiments, visit the scene, or research any aspect of the case, does not end when the parties rest. The juror is discharged from that obligation only when the juror is discharged from jury duty, typically after a verdict has been rendered. Michigan Crim. JI

---

[4] As discussed, § 2254(d)(2) allows a federal court to overturn a state court's decision if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under § 2254(e)(1), a federal habeas court must presume the correctness of state court factual determinations, and that presumption my only be rebutted "by clear and convincing evidence." The Supreme Court has declined to "define[] the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, — U.S. —, —, 134 S. Ct. 10, 15 (6th Cir. 2013), *citing Wood v. Allen*, 558 U.S. 290, 293 (2010) (explicitly declining to decide the question "whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)"). The Sixth Circuit court of Appeals also has declined to resolve this issue. *McMullan v. Booker*, 761 F.3d 662, 670 (6th Cir. 2014). Likewise, this Court need not resolve this issue because, under either section, the result would be the same. The factual determination at issue is both unreasonable and the presumption of correctness has been rebutted by "clear and convincing evidence." *See Rice*, 660 F.3d at 254 n.6 ("[T]he factual determination at issue was as unreasonable as it was clearly erroneous, and for that reason, the precise interplay between § 2254(d)(2) and (e)(1) is of little moment under the circumstances of this case.").

2.16 (detailing jurors' duty not to consider information from outside the courtroom).  The

judge had not yet rendered a verdict when he went to the lock-up.  But, the judge's

obligation not to seek outside information does not, by itself, mean that he did not do so.

Second, the Michigan Court of Appeals relied on the judge's statement that he

acted "only out of curiosity."  *Neal*, 2007 WL 3085611 at *2.  The Michigan Court of

Appeals' conclusion that the trial judge's "curiosity" was somehow unrelated to the

matter at hand – making a factual determination as to Neal's guilt or innocence – is

unsupported by *any* record evidence.  He was indeed curious, curious whether the trial

testimony about the similarities or dissimilarities between Neal and Miles were correct.

He used his view of the person in lock-up to corroborate the testimony of Officer

O'Rourke.  He took "judicial notice" of the appearance of the person in lock-up.

Michigan courts allow a court to take judicial notice of facts that are relevant to the matter

at hand. *See Winekoff v. Pospisil*, 384 Mich. 260, 266 (Mich. 1970) (holding that a court

should take judicial notice only when the thing, occurrence, or fact is relevant to proving

or disproving an issue in dispute).  It is illogical that the judge would have, *sua sponte*,

taken judicial notice of the person's appearance if it was not relevant to a determination

of the ultimate verdict.  The only reasonable purpose for the judge's expressed and

satiated curiosity is an evidentiary one.  Immediately after viewing the person in lock-up,

the judge made an evidentiary finding:

> [L]et the record . . . reflect that there certainly is [sic] striking dissimilarities
> between Mr. Neal and Mr. Miles, and that certainly the description of Mr.

> Miles as by the police officers, as well as by the other witnesses is
> consistent.  He's younger, taller, bigger, and somewhat lighter.

Tr., 6/16/06 at 26.

Finally, the state court found "nothing to suggest that the trial court relied on the view of Miles to determine a fact in issue."  *Id.*  In fact, it is unmistakable from the trial court's findings of fact that the judge relied on the view of Miles to determine the key fact at issue: the identity of the perpetrator.  The trial court judge stated that the case boiled down to this central question: did Neal, Miles or an unknown third party shoot Clark.  Tr., 6/16/06 at 36.  The prosecutor and defense counsel both argued identity in closing arguments.  Defense counsel focused on the possibility that Miles was the shooter and that McElroy lied because she was trying to protect Miles, her drug supplier.

The judge left the courtroom to view someone who may or may not have been Miles because the testimony received and closing argument rendered him curious about Miles' appearance.  Eight transcript pages after going to the lock-up, the judge relied on this viewing to corroborate another witness' testimony when rendering his verdict:

> Then there's . . . O'Rourke's testimony that Miles is larger and taller and
> younger and lighter than the defendant, and as the Court previously stated
> on the record took judicial notice of Mr. Miles, went back to lock up.  Did
> observe him, and that observation is consistent.

*Id.* at 33.  He then explicitly used what he saw to corroborate O'Rourke's testimony.  The trial court's viewing of an individual the trial court believed to be Miles was directly relevant to Neal's guilt or innocence.  Any evidence tending to establish a defendant's identity as the perpetrator is evidence that inculpates the defendant.

20

The only fair and reasonable reading of the record is that the trial court judge gathered evidence upon which he relied in reaching his verdict. The Michigan Court of Appeals' holding to the contrary is clearly erroneous. Thus, the state court unreasonably determined that the trial judge did not conduct a lock-up view for evidentiary purposes. The Michigan Court of Appeals relied on this unreasonable determination in adjudicating Neal's absence of counsel and right to be present claims.

**c.**

Where a state court decision is based upon an unreasonable determination of the facts under § 2254(d)(2), the Court's review of the underlying claim is then "'unencumbered by the deference the AEDPA normally requires.'" *Rice*, 660 F.3d at 251, *quoting Panetti v. Quarterman*, 551 U.S. 930, 948 (2007), and collecting cases. Thus, the Court must now determine whether Neal can prevail on his underlying constitutional claim. The Court holds that Neal was denied counsel during a critical stage of the proceeding.

Where counsel is absent or denied during a critical stage, "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry [of prejudice to the defendant] is unnecessary." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (*citing Cronic*, 466 U.S. at 658-59 & 659 n. 26). A critical stage of a criminal proceeding is "a step of a criminal proceeding . . . that h[olds] significant consequences for the accused." *Cone*, 535 U.S. at 695-96 (2002). "Whether it was a critical stage depends on whether there was a

21

reasonable probability that [defendant's] case could suffer significant consequences from his total denial of counsel at the stage. *Van v. Jones*, 475 F.3d 292, 313 (2007).

The Sixth Circuit Court of Appeals recently held that the "'governing law set forth in [Supreme Court] cases,' *Penry,* 532 U.S. at 792, establishes that the taking of evidence is a critical stage of trial." *Donald v. Rapelje,* — F. App'x —, 2014 WL 4211202, *5 (6th Cir. Aug. 26, 2014). *See also Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir.), vacated on other grounds, 484 U.S. 806 (1987), reinstated 839 F.2d 300 (6th Cir.1988) ("It is difficult to perceive a more critical stage of a trial than the taking of evidence on the defendant's guilt."). In *Donald,* the Sixth Circuit, on habeas review, addressed an attorney's absence from the courtroom during the testimony of a government witness. Donald was convicted of first-degree felony murder and armed robbery. His felony murder conviction was based upon an aider and abettor theory. To show that Donald, the trigger-man, and additional co-conspirators planned and executed the robbery and murder together, the prosecution presented testimony and phone records showing calls between cell phones belonging to the trigger-man and two co-conspirators (not Donald) on the day of the shooting, with an increased volume of calls around the time of the robbery and shooting.

The prosecution sought to introduce a demonstrative chart diagraming the phone records during the testimony of a police detective. *Id.* at —, 2014 WL 4211202 at *1. Donald's co-defendant objected to the admission of the exhibit and a conference was held outside the presence of the jury. Donald's attorney did not join in the objection to the

22

chart stating, "I don't have a dog in this race. It doesn't affect me at all." *Id.* at *2. The trial judge held the chart admissible and reconvened the jury. The trial judge noted Donald's attorney's absence from the courtroom. He nevertheless proceeded in defense counsel's absence. After a seventeen-minute absence, Donald's attorney returned to the courtroom. The trial judge informed him that they had been discussing the telephone chart. Defense counsel reiterated that he "had no dog in the race and no interest in that." *Id.* at *3.

On direct review, the Michigan Court of Appeals held that defense counsel's absence did not occur during a critical stage of trial because the absence was brief, the telephone records did not directly implicate Donald, and Donald's attorney stated that the evidence did not concern Donald. The Sixth Circuit Court of Appeals held that this decision ignored clear Supreme Court precedent that "an attorney's absence during an adversarial portion of the trial that holds significant consequences for the defendant, such as the taking of evidence, is an absence during a critical stage of the trial." *Id.* at *5. The Sixth Circuit held that the state court's decision was contrary to clearly established federal law because the state court erred in applying *Strickland* rather than *Cronic*. *Id.* at *7. The Sixth Circuit also held, alternatively, that the Michigan Court of Appeals unreasonably applied *Cronic* to the facts of Donald's case. The Sixth Circuit acknowledged that Donald was not named in the cell phone evidence admitted during his counsel's absence, but reasoned that the jury could infer that Donald made one of the referenced phone calls from a co-conspirator's phone. *Id.* The telephone evidence was

23

used by the prosecutor to show contact between the parties and support for the argument that this was one conspiracy.  As such, the Sixth Circuit concluded, the telephone evidence held significant consequences for Donald.  *Id.*

Similarly, Neal's attorney's absence came at a critical stage of the proceeding – the taking of evidence.  The trial judge took evidence about a matter essential to the case – the identity of the shooter.  Neal identified Miles as a possible perpetrator.  The trial judge viewed someone he believed to be Miles (the fact that there is no record showing that the person viewed by the trial judge was, in fact, Miles is an object lesson in why the presumption of prejudice is justified in absence of counsel cases) and used that evidence to corroborate and bolster trial testimony.  Thus, the judge's view of a person believed to be Miles was a taking of evidence and counsel's absence during that period denied Neal counsel during a critical stage of the proceeding.  Prejudice is presumed and habeas relief is granted.

### C.   Right to be Present During Critical Stage

#### 1.   Procedural default

Neal claims that his absence from the lock-up view violated his Sixth Amendment right to confront the witnesses against him and his Fourteenth Amendment right to due process of law.  Respondent argues that this claim is also procedurally defaulted and barred from habeas review.

As discussed, habeas relief is precluded on claims that were not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright,* 433 U.S. at

85-87. A habeas claim is procedurally defaulted if: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule against the petitioner; (3) the rule constitutes an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice to excuse the default, or that enforcing the procedural default will result in a miscarriage of justice. *Foster v. Warden, Chillicothe Correctional Institution,* 575 F. App'x 650, 653 (6th Cir. Aug. 8, 2014). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker*, — at —, 131 S. Ct. at 1127-28, *quoting Beard v. Kindler*, 558 U.S. —, 130 S. Ct. 612, 618 (2009).

The Michigan Court of Appeals held that Neal's claim that he was denied his right to be present during all critical stages of the criminal proceedings was procedurally barred because he "did not raise an appropriate objection below." *Neal*, 2007 WL 3085611 at *1. At the time of Neal's trial (and to this day), Michigan courts have held that a defendant may waive his right to be present for a critical stage of a criminal proceeding by affirmative consent or by failing to appear when he is   Michigan courts do not presume waiver from a silent record. *People v. Armstrong*, 212 Mich. App. 121, 129 (1995). *See also People v. Kammeraad*, — N.W.2d —, 2014 WL 4999455 (Mich. Ct. App. Oct. 7, 2014) (holding that defendant did not waive his right to be present for trial even though he expressly asked to be removed from the courtroom because the record did "not reflect that defendant was ever specifically informed of his constitutional right to be present at trial"). In this case, Neal was not clearly apprised of his right to be present at

the judge's view.  The judge did not even inform anyone that he was going to conduct a view before he exited the courtroom.  Under Michigan law, Neal, therefore, did not waive his right to be present at this critical stage of the proceeding.  Michigan courts have declined to impose a contemporaneous objection requirement in such circumstances.

For example, in *People v. Armstrong*, 212 Mich. App. 121, 130 (Mich. Ct. App. 1995), the Michigan Court of Appeals addressed the merits of Armstrong's claim that he was denied his right to be present even though Armstrong failed to object to the absence. Armstrong was absent from the portion of the trial when defense counsel rested defendant's case without calling any defense witnesses.  Defense counsel advised the court that the defense had no objection to the proceedings occurring in Armstrong's absence.  The Michigan Court of Appeals held that, because the record was silent on this issue, Armstrong's waiver of his right to be present would not be presumed.  *Id.* at 129. The Michigan Court of Appeals did not invoke any procedural bar and, instead, proceeded to consider the merits of Armstrong's claim that he was prejudiced by the violation.  *Id.  See also People v. Woods*, No. 265840, 2007 WL 548784 *1-2 (Mich. Ct. App. Feb. 22, 2007) (addressing the merits of defendant's claim that he was denied his right to be present during a discussion regarding supplemental jury instructions although the deprivation was not objected to); *People v. Foster*, No. 301361, 2013 WL 4033639 (Mich. Ct. App. Aug. 8, 2013) (addressing merits of defendant's right to be present claim even though no objection made at trial).

At the time of Neal's trial, Michigan courts did not have a firmly established rule preventing appellate review of a denial of the right to be present claim when there was no contemporaneous objection. Therefore, the contemporaneous objection rule in the context of the denial of the right to be present cannot be considered "adequate and independent" of federal law so as to preclude federal habeas review. The Court will examine the merits of this claim.

### 2. Review of the merits

One of the "most basic" rights guaranteed by the Sixth Amendment's Confrontation Clause is "the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). *See also Rushen v. Spain*, 464 U.S. 114, 117 (1983) ("[T]he right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant."). In addition, a criminal defendant has a "due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (*quoting Snyder v. Massachusetts,* 291 U.S. 97, 105-06 (1934)).

The Michigan Court of Appeals held, and this Court agrees, that the judge's view of the person thought to be Miles was a critical stage of the proceeding. The state court nevertheless found no violation of Neal's right to be present based upon its finding that the lock-up view was not conducted for evidentiary purposes. This factual finding was an unreasonable determination of the facts under § 2254(d)(2) and the Court owes no

27

deference to the state court's resolution of Neal's right to be present claim.  *See Rice*, 660 F.3d at 251.

Neal's absence from lock-up view violated both the Sixth Amendment's right of confrontation and the Fourteenth Amendment's right to due process.  The appearance of the person viewed in the lock-up was used to corroborate trial testimony implicating Neal. Had Neal been present, he could have verified whether the individual was, in fact, Miles, whom he knew, and determined whether Miles' appearance had changed since the crime. In short, he would have been able to defend against this incriminating evidence, the very rights protected by the Confrontation and Due Process Clauses.

The error here is not harmless.  A violation of the right to be present is subject to harmless error analysis.  *Rushen v. Spain*, 464 U.S. 114, 119 n.2 (1983).  On habeas review, to determine whether an error is harmless a court must ask whether the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) *quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless."  *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).  The Supreme Court explained: "By 'grave doubt' we mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."  *Id.* at 435.

28

The trial judge used the lock-up view for evidentiary purposes and no record of that evidence exists.  The Court cannot ignore the possibility that the person viewed in the lock-up was not Miles, raising grave doubts about the trial judge's ultimate finding on the identity of the shooter and undermining the integrity of the process.  The trial judge used the lock-up view to corroborate testimony on the identity of the perpetrator.  The lock-up view bore upon the heart of Neal's defense – that Miles, not he, was the perpetrator.  Neal lost the opportunity to assess whether the person viewed in lock-up was Miles and to argue that Miles' appearance had changed since the date of the offense.

The prejudice is compounded by the absence of counsel at the lock-up view.  The Sixth Circuit Court of Appeals has found harmless a defendant's absence from a portion of the trial when defense counsel was present.  In *Spikes v. Mackie*, 541 F. App'x 637 (6th Cir. 2013), the Sixth Circuit held that a defendant's right to be present during all critical stages of the proceedings was violated when the trial judge removed him from the courtroom during the sentencing hearing.  The Sixth Circuit held that the error was harmless in part because defendant's attorney was present during the entire sentencing hearing.  *Id.* at 650.  Similarly, in *Snyder v. Massachusetts*, 291 U.S. 97 (1934) (overruled in part on other grounds), the Supreme Court held that the Due Process Clause was not violated by excluding a defendant from a jury's on-site inspection of the crime scene because the defendant's attorney was present and participated.  The presence of defense counsel "supplie[d] an additional assurance that nothing helpful to either side will be overlooked upon the view." *Id.* at 113. *Cf. United States v. Walls*, 443 F.2d 1220, 1223

29

(6th Cir.1971) (finding "reversible error for the court to deny appellant *and his attorney* the opportunity to attend the view to insure against the intrusion of prejudicial error" (emphasis added), but basing its decision upon its supervisory authority over the administration of criminal justice in the district courts and not the Constitution).

The Court concludes that the error was not harmless and habeas relief is therefore granted.

### III.  Conclusion

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus is CONDITIONALLY GRANTED.  Unless a date for a new trial is scheduled within 120 days, Petitioner must be unconditionally released.  Because the Court concludes that the Petitioner's denial of counsel and right to be present claims are sufficient to warrant habeas corpus relief, the Court need not address Petitioner's remaining claims.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: October 31, 2014

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on October 31, 2014, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant